UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANIEL H.,[1] | ) |
|            Plaintiff, | ) ) ) |
|            v. | )    No. 1:19-cv-01541-JMS-DLP ) |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) |
|            Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Pro se Plaintiff Daniel H. filed for disability benefits with the Social Security Administration on February 25, 2010, alleging a disability onset date of March 9, 2009. [Filing No. 7-2 at 14.] His application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge ("ALJ") Blanca B. de la Torre. [Filing No. 7-2 at 14.] ALJ de la Torre issued a decision denying Daniel H. benefits, and the Social Security Appeals Council upheld the ALJ's decision and denied Daniel H.'s request for review. [Filing No. 7-2 at 25; Filing No. 7-2 at 2.] This Court affirmed ALJ de la Torre's decision, but the Seventh Circuit subsequently remanded the case for a rehearing. *Daniel H. v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015).

Daniel H. then appeared for another hearing with ALJ de la Torre and was again denied benefits. [Filing No. 7-11 at 29; Filing No. 7-11 at 42.] The Appeals Council again upheld ALJ de la Torre's decision and denied Daniel H.'s request for review. [Filing No. 7-11 at 2.] However,

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

on March 30, 2018, the Honorable William T. Lawrence remanded the case for a rehearing. [1:16-cv-02898-WTL-DLP, Filing No. 23.]

This time, the hearing was before ALJ Albert J. Velasquez on January 8, 2019. [Filing No. 7-32 at 29.] Daniel H. was once again denied benefits. [Filing No. 7-32 at 6.] Daniel H. then filed suit, asking this Court to review his denial of benefits. [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). As explained by the Supreme Court,

> The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months.

*Id.* at 217 (quotations omitted).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists to support the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). However, "[i]f a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the [Social Security Administration] to establish that the claimant is capable of performing work in the national economy." *Id.*

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An

3

award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND[2]

Daniel H. filed for disability benefits on February 25, 2010, originally alleging a disability onset date of January 1, 2005. [Filing No. 7-2 at 14.] He later amended his alleged onset of disability date to March 9, 2009. [Filing No. 7-2 at 14.] His alleged disability involves obesity, a tear of the medial meniscus in the right knee, partial tearing of ligaments in the right ankle, disc degeneration in the thoracic region, back pain and numbness due to spinal stenosis, hypothyroidism, fibromyalgia, tinnitus, and muscle spasms. [Filing No. 9 at 3.] Daniel H.'s date last insured was June 30, 2010. [Filing No. 7-32 at 6.]

At the time of the onset date, Daniel H. was 33 years old and had recently moved to Indiana. [Filing No. 9 at 5.] Daniel H. has a high school education and has past relevant work as an aircraft mechanic, electrician, and fast-food lead. [Filing No. 9 at 5.] He had one eight-month old child when he moved to Indiana. [Filing No. 9 at 5.] Daniel H. and his wife lived with his parents for a few months until they bought a house in July 2009. [Filing No. 9 at 5.] After turning one-year old, Daniel H.'s child began going to daycare three times per week, while Daniel H.'s father would come over to help with childcare about six days per month. [Filing No. 9 at 5.]

ALJ Velasquez followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Daniel H. was not under a disability at any time between the alleged onset date of March 9, 2009 through the date last insured of June 30, 2010. [Filing No. 7-32 at 22.] Specifically, the ALJ found the following:

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

- At Step One, Daniel H. has not engaged in substantial gainful activity[3] during the period from his alleged onset date through his date last insured. [Filing No. 7-32 at 8.]

- At Step Two, Daniel H. had the following severe impairments: obesity; a possible tear of the medial meniscus in the right knee; partial tearing of ligaments in the right ankle; headaches; chronic pain/fibromyalgia; degenerative disc disease; and, tinnitus. [Filing No. 7-32 at 8.]

- At Step Three, Daniel H.'s impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, 404.1525, and 404.1526. [Filing No. 7-32 at 9.]

- After Step Three but before Step Four, Daniel H. has the RFC to do as follows:

    > Perform sedentary work as defined in 20 CFR 404.1567(a) except: lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for two of eight hours and sit for six of eight hours; no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of stairs or ramps; the work should allow the individual to alternate to a sitting or standing position at his or her option for one or two minutes each hour, in addition to normal work breaks; should avoid work at unprotected heights, working around dangerous moving machinery, or working around open flames or large bodies of water; no requirement for the use of a phone or a requirement to localize sound; no more than occasional balancing, stooping, kneeling, or crouching; no crawling; should avoid work in a concentrated exposure to areas of extreme temperature, humidity, and wetness; and no repetitive forceful gripping (which means gripping an item with force necessary/required to lift an item that weights more than ten pounds) or the operation of vibrating tools. The claimant is able to sustain attention for two-hour segments of time and can adapt as needed to work setting changes provided work setting does not change more than occasionally. [Filing No. 7-32 at 10.]

- At Step Four, Daniel H. was unable to perform any past relevant work through the date last insured. [Filing No. 7-32 at 20.]

- At Step Five, considering Daniel H.'s age, education, work experience, and RFC, there are jobs that exist in sufficient numbers in the national economy that he can perform, such as account clerk, document preparer, and tube operator. [Filing No. 7-32 at 20-21.]

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

Daniel H. did not file written exceptions and the Appeals Council did not review the decision of the ALJ. [Filing No. 15 at 3.] The ALJ's decision became final 61 days after the January 29, 2019 decision, making it the Agency's final decision for purposes of judicial review. [Filing No. 15 at 3.] Daniel H. then filed this civil action asking this Court to review his denial of benefits. [Filing No. 1.]

## III.
### DISCUSSION

Daniel H. challenges the ALJ's decision on the following grounds: (1) "the ALJ ignored critical evidence indicative of disability"; (2) "the ALJ failed to properly weigh [Daniel H.'s] credibility"; (3) "the ALJ failed to properly incorporate [Daniel H.'s] treating physician opinion under the full breadth of SSR 96-2p, and weighed the medical opinions according to 404.1527"; (4) the ALJ failed to correctly assess Daniel H.'s RFC; and (5) the ALJ failed to properly assess Steps Three and Four, as there is a disagreement between the findings in those steps. [Filing No. 9 at 8.] Because Daniel H.'s fourth and fifth allegations of reversible error center around the ALJ's analysis of Daniel H.'s RFC, these will be discussed as one argument below. Similarly, although Daniel H. claims error as to Step Four (*i.e.*, whether he has the RFC perform the requirement of his past relevant work), this step was decided in Daniel H.'s favor, [Filing No. 7-32 at 16], and therefore will not be addressed. The Court addresses each remaining issue in turn.

### A. Whether the ALJ ignored critical evidence of disability

Daniel H. argues that the ALJ ignored critical evidence of disability in two ways. First, Daniel H. claims that the ALJ largely ignored the evidence presented by his treating physician, Dr. Randy Brown, [Filing No. 9 at 14-15], which will be addressed below as a separate issue. Second, Daniel H. argues that the ALJ ignored evidence of his fibromyalgia and chronic pain. [Filing No.

6

[9 at 12.]

Daniel H. asserts that the ALJ ignored the fact that his diagnosis of fibromyalgia by Dr. Brown was confirmed in the testimony of Dr. Francis, the orthopedic surgeon who appeared at the previous hearing as an impartial medical expert and who Daniel H. claims is an expert in fibromyalgia. [Filing No. 9 at 13.] Daniel H. argues that "Dr. Francis testified that he agreed with Dr. Brown's assessment and acknowledged that [Daniel H.] had fibromyalgia," and yet, the ALJ ignored this concession by Dr. Francis when reaching his decision. [Filing No. 9 at 13.]

In response, the Commissioner challenges Daniel H.'s interpretation of Dr. Francis's testimony, noting that the context of Dr. Francis's alleged "concession" demonstrates that although Dr. Francis stated he had "no reason to disagree" with Dr. Brown's opinion, that was because Dr. Brown's opinion was based on Daniel H.'s subjective complaints at the time. [Filing No. 7-32 at 18; Filing No. 15 at 16.] The Commissioner argues that Dr. Francis was not agreeing with Dr. Brown's opinion; in fact, Dr. Francis reached a different conclusion than Dr. Brown regarding the level of work Daniel H. could perform. [Filing No. 15 at 16.] Further, the Commissioner argues, the ALJ did not ignore Daniel H.'s fibromyalgia; on the contrary, he considered it throughout the decision and even concluded that Daniel H.'s chronic pain and fibromyalgia was a severe impairment at Step Two. [Filing No. 15 at 19.]

The Court agrees with the Commissioner that the ALJ adequately considered evidence of Daniel H.'s impairments, including fibromyalgia and chronic pain. The ALJ considered Dr. Francis's testimony, including his statement that he had "no reason to disagree" with Dr. Brown's opinion because it was based on Daniel H.'s subjective complaints at the time. [Filing No. 7-32 at 18.] However, contrary to Daniel H.'s portrayal of the testimony, Dr. Francis did not "agree" with Dr. Brown's opinion as to the work load that Daniel H. could handle. Rather, Dr. Francis

simply stated that he had "no reason to disagree" with Dr. Brown's opinion, because it was formed based on Daniel H.'s subjective complaints at the time that Dr. Brown was seeing Daniel H. as a patient. [Filing No. 7-11 at 88.] Nevertheless, Dr. Francis ultimately reached a different conclusion from Dr. Brown in his analysis, limiting Daniel H. to light work, but more work than had been instructed by Dr. Brown. [Filing No. 7-32 at 18.]

Setting aside Dr. Francis's testimony, there are other examples of the ALJ reasonably considering Daniel H.'s chronic pain and fibromyalgia throughout his decision. For instance, the ALJ weighed evidence that Dr. Brown said he planned to run laboratory tests to rule out other impairments, but never did so. [Filing No. 7-32 at 20.] The ALJ also considered evidence that, although Dr. Brown indicated he would change Daniel H.'s medication from pain medication and antidepressants to treat his fibromyalgia, he never did so. [Filing No. 7-32 at 20.] In weighing the evidence, the ALJ considered Daniel H.'s alleged symptoms, the clinical findings, and his treatment regimen to conclude that the allegations concerning the severity of these conditions were not supported by the clinical evidence. [Filing No. 7-32 at 13.]

The Commissioner does not dispute that Daniel H. was diagnosed with fibromyalgia. [Filing No. 15 at 21.] However, diagnosis does not establish a disabling impairment. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). This principle is especially true in the case of fibromyalgia, which may not be disabling in every case. *See id.* Although the ALJ determined that Daniel H. did have a severe impairment of chronic pain/fibromyalgia, the ALJ found in Step Three that Daniel H.'s impairments did not meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 404.1525, and 404.1526, and found that the impairments did not rise to the level of a disability, as defined in the Social Security Act. [Filing No. 7-32 at 8-9; Filing No. 7-32 at 22.]

For these reasons, Daniel H.'s argument that the ALJ ignored evidence of his fibromyalgia and chronic pain does not warrant remand.

### B. Whether the ALJ failed to properly weigh Daniel H.'s credibility

Next, Daniel H. argues that the ALJ failed to properly weigh his credibility during the hearing. Daniel H. points to language from both remand orders directing the ALJ to consider Daniel H.'s credibility and to keep in mind that performing minimal household tasks and caring for young children alone does not equate to an ability to work in the national economy. [Filing No. 9 at 16.] Daniel H. argues that the ALJ improperly found that his testimony should be given less weight based on the fact that he occasionally performed household chores and cared for his children. [Filing No. 9 at 18.]

In response, the Commissioner argues that the ALJ considered all the relevant factors, including the subjective statements by Daniel H. [Filing No. 15 at 29.] The Commissioner argues that the ALJ's decision was not based solely on Daniel H.'s ability to perform minimal household tasks and child care, but, rather, those were two factors of many that went into the ALJ's consideration. [Filing No. 15 at 29-30] (detailing factors used by the ALJ to reach his conclusion). According to the Commissioner, the ALJ did not equate Daniel H.'s performance of minimal household chores and child care with an ability to perform full-time work; instead, the ALJ considered this evidence when concluding that Daniel H.'s daily activities did not show that he had "limitations that would be inconsistent with a modest range of sedentary work." [Filing No. 15 at 30.] The Commissioner argues that the ALJ reasonably considered Daniel H.'s subjective statements and determined that they were not entirely consistent with the other record evidence. [Filing No. 15 at 31.]

In reply, Daniel H. argues that the ALJ implied that Daniel H.'s "daily activities indicate

9

an ability to work," and that such a conclusion is improper. [Filing No. 16 at 4.]

The Court agrees with the Commissioner that the ALJ properly considered Daniel H.'s credibility. Contrary to Daniel H.'s argument, the ALJ was not equating Daniel H.'s performance of minimal household chores and child care with an ability to perform full-time work. Instead, the ALJ was considering Daniel H.'s testimony, in addition to the other record evidence, when determining the weight to give each piece of evidence.

For instance, the ALJ noted that at the initial hearing, Daniel H. alleged that he did not perform household chores. [Filing No. 7-32 at 11.] The ALJ then points out that, in Daniel H.'s prehearing memorandum, Daniel H. stated that he "has to take rest breaks when performing household tasks." [Filing No. 7-32 at 11.] The ALJ also noted that in the 2015 hearing, Daniel H. admitted to putting dishes in the dishwasher, preparing simple food items, folding laundry, going grocery shopping with his wife, and picking up his older son from daycare. [Filing No. 7-32 at 11.] This kind of consideration of possible discrepancies between Daniel H.'s statements and the objective evidence is exactly the kind of credibility assessment that ALJs are required to do.

Similarly, the ALJ weighed Daniel H.'s complaints of pain against medical tests to determine Daniel H.'s credibility. For example, the ALJ pointed out that a 2007 MRI showed a radial tear of the medial meniscus, but an examining orthopedic surgeon stated that there was "no evidence of medial meniscal tear on his reading" of the MRI study. [Filing No. 7-32 at 12.] In 2009, right ankle x-rays were "unremarkable," x-rays of his left knee in 2006 and 2009 came back normal, and June 2009 x-rays of his thoracic spine, lumbar spine, and bilateral knees were all normal. [Filing No. 7-32 at 12.]

The ALJ also noted that Daniel H. initially injured his knee and ankle in 1998, well before his alleged onset date. [Filing No. 7-32 at 13.] However, Daniel H. continued to work through

2004 with these injuries. [Filing No. 7-32 at 13.] Daniel H. then quit his job to pursue an Associate's Degree, not due to any inability to perform his duties at work. [Filing No. 7-32 at 13.] Although there exist more instances of the ALJ weighing Daniel H.'s subjective statements against the medical evidence, these examples serve to highlight the ALJ's commitment to considering Daniel H.'s credibility throughout his decision. It is unclear how else Daniel H. hoped the ALJ would consider his credibility, as the ALJ clearly weighed Daniel H.'s claims against the medical evidence and the record. The Court must afford the ALJ's credibility determination "considerable deference," and may only overturn it if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). The Court finds that the ALJ's weighing of Daniel H.'s credibility was not "patently wrong," and therefore is not a basis for remand.

### C. Whether the ALJ ignored the treating physician's opinion

Daniel H. argues that the ALJ should have given Dr. Brown's opinion controlling weight. [Filing No. 9 at 19.] He alleges that the ALJ improperly determined that Dr. Brown's opinion should be given little weight because it was not well-supported by the medical records and Dr. Brown had only seen Daniel H. on three occasions. [Filing No. 9 at 20.] Daniel H. argues that the ALJ did not provide sufficient reasons for departing from the norm of giving the opinion of a treating physician the greatest controlling weight. [Filing No. 9 at 19-20.] Daniel H. concludes that the ALJ simply adopted parts of the medical reports that supported his decision and ignored the other medical opinions that did not match his views. [Filing. No. 9 at 25.]

The Commissioner argues that the ALJ properly weighed Dr. Brown's opinions within the context of Dr. Brown's relationship with Daniel H., giving "several good reasons" for not relying solely on his opinion, including: (1) Dr. Brown did not have a long treatment history with Daniel H. that is typical for treating physicians; (2) Dr. Brown was not a specialist like Dr. Francis, an

11

orthopedist; and, (3) Dr. Brown's "severe, brief opinions lacked supportability and consistency with the other medical evidence." [Filing No. 15 at 24.]

20 C.F.R. § 404.1527(a)(2) provides:

> Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence I your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in [the following subsections][4] in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

[20 C.F.R. § 404.1527(a)(2).]

The Court finds that the ALJ properly applied the correct legal standard when considering Dr. Brown's medical opinion. The ALJ considered the treating doctor's medical opinion in context with the rest of the evidence in the case. The ALJ did not disregard the opinion of Dr. Brown, but simply did not assign it controlling weight due to the other factors that the ALJ discussed in his opinion. The factors that caused the ALJ to diminish the value of Dr. Brown's opinion included: (1) the fact that Dr. Brown's 2010 opinion was inconsistent with Daniel H.'s treatment history

---

[4] Those factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether, and how much, the source presents relevant evidence (such as medical signs and laboratory findings) to support the medical opinion; (4) the level of consistency between the medical opinion and the record as a whole; (5) whether the source is a specialist; and, (6) any factors brought to the ALJ's attention that tend to support or contradict the medical opinion. 20 U.S.C. § 44.1527(c).

through 2010; (2) Dr. Brown's failure to follow through on his stated intention to change Daniel H.'s treatment plan to focus on fibromyalgia; (3) Dr. Brown's inexperience in the field of orthopedics, unlike other testifying doctors like Dr. Francis; (4) Dr. Brown's inability to review the additional imaging studies of Daniel H.'s spine and joints from 2011 through 2015 prior to issuing his opinion; (5) the brief relationship between Daniel H. and Dr. Brown, which involved only three visits before the 2010 opinion; (6) the discrepancy between Dr. Brown's opinion and the objective medical evidence; and (7) the absence of fibromyalgia on Dr. Brown's list of diagnoses. [Filing No. 7-32 at 20.] The ALJ neatly summarized his hesitance to rely on Dr. Brown's opinion by stating, "Dr. Brown's opinions are inconsistent with the opinions of both testifying medical experts, the State agency medical consultants, the consultative examiner, and the claimant's own prior reports of his activities of daily living." [Filing No. 7-32 at 20.]

Because the ALJ gave satisfactory reasons for not assigning controlling weight to Dr. Brown's opinion, the ALJ satisfied his obligations. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) (citing *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008)). The ALJ appropriately weighed the opinion of Dr. Brown with the objective medical evidence and other relevant medical opinions, as well as other factors. Therefore, Daniel H.'s argument that the ALJ improperly ignored Dr. Brown's opinion does not warrant remand.

### D. Whether the ALJ incorrectly assessed Daniel H.'s RFC

Finally, Daniel H. claims that the ALJ incorrectly assessed his RFC during Step Three but before Step Four. [Filing No. 9 at 30.] Daniel H.'s argument regarding the RFC assessment is two-fold. First, Daniel H. argues that the ALJ did not consider Dr. Brown's opinion, even though the ALJ gave Dr. Francis's opinion partial weight. [Filing No. 9 at 32.] Second, Daniel H. argues that there is a discrepancy between the ALJ's RFC determination and the RFC determination that

was provided to the vocational expert. [Filing No. 9 at 32.] Daniel H. claims that the exclusion of repetitive forceful gripping was not provided to the vocational expert before the expert made his determination. [Filing No. 9 at 32.]

The Commissioner argues that the ALJ correctly adhered to the RFC analysis requirements as described in SSR 96-8p, which require that the ALJ "minimally articulate" the reasons for his RFC finding. [Filing No. 15 at 17.]

The Court agrees with the Commissioner that the ALJ sufficiently articulated and supported his RFC finding. First, as discussed above, the ALJ properly weighted Dr. Brown's opinion. Second, during the examination of the vocational expert, the ALJ stated that the work "should require no repetitive forceful gripping." [Filing No. 7-32 at 77.] Thus, Daniel H.'s claims that the vocational expert was questioned regarding limitations that differ from those included in the RFC is incorrect.

The ALJ "minimally articulated" his reasoning behind the RFC determination to allow the appellate court to "trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Although the ALJ is not required to provide a written evaluation of every piece of evidence and testimony, the ALJ came close. The ALJ did not disregard entire lines of evidence nor produce arbitrary determinations. Each determination was supported by substantial evidence, and the ALJ properly weighed contradictory testimony and statements to the best of his ability by using the objective evidence available. Because this Court is not permitted to reweigh the facts and the ALJ's RFC determination was supported by substantial evidence, Daniel H.'s claim that remand is required due to the RFC analysis fails. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).

# IV.
## CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 271 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Daniel H. to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: 12/9/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**
Daniel H.
8941 Carnation Dr.
Noblesville, IN 46060

15